HAGEMAN, APPELLEE, *v.* THE CLEVELAND TRUST COMPANY,
TRUSTEE, ET AL., APPELLANTS; HAGEMAN ET AL., APPELLEES.

[Cite as Hageman v. Cleveland Trust Co. (1976),
45 Ohio St. 2d 178.]

(No. 75-109—Decided February 25, 1976.)

*Meyers, Stevens & Rea Co., L. P. A., Mr. Richard F. Stevens, Mr. William J. Mittendorf, Messrs. Keep & Scholz* and *Mr. Andrew M. Keep,* for plaintiff-appellee.

*Messrs. Miraldi, Lumley & Barrett, Mr. Ray L. Miraldi, Messrs. Baker, Hostetler & Patterson, Mr. Richard F. Stevens, Mr. Robert M. Brucken* and *Mr. James H. Rice,* for defendant-appellant The Cleveland Trust Company.

*Mr. William J. Brown,* attorney general, *Mr. Richard C. Farrin* and *Mr. J. John Stevenson,* for defendant-appellant Attorney General.

*Mr. Virgil C. Burgett,* for defendant-appellant F. Marion Koppenhafer.

180

*Mr. D. R. Goldthorpe,* for defendant-appellant St. Peter's United Church of Christ.

*Messrs. Ford, Howland, Whitney & Haase* and *Mr. Roland H. Strasshofer, Jr.,* for defendant-appellant Deaconess Evangelical Hospital.

*Messrs. Arter & Hadden* and *Mr. Carlton B. Schnell,* for defendants-appellees Dwight C. Hageman and Nancy H. Green.

*Per Curiam.* This action concerns the 1969 trust agreement. If plaintiff's success or failure on the merits of this case could not affect his status as "virtually disinherited," then his interest would be insufficient to maintain the action (*State, ex rel. Dallman,* v. *Court of Common Pleas* [1973], 35 Ohio St. 2d 176), and the trial court's dismissal of his complaint is wholly proper. Admittedly, plaintiff has no such interest if the trust, in fact, is valid, so we need not consider or decide that question.

Thus, we direct our inquiry to the significance of the trust agreement, even if it failed to effectuate a trust.

Appellants assert that the existence of the trust agreement document at the time of the will's execution and the will's reference to the agreement, incorporates the *document* into the will pursuant to R. C. 2107.05.[1] The subject trust agreement is certainly a document within the terms of that statute, but plaintiff argues that the decedent's intent to pass property by will to a trustee of a purported inter vivos trust, so that the residuary estate would "pourover" into the trust, requires that R. C. 2107.63,[2] rather than R. C. 2107.05, "govern" the matter.

---

[1] R. C. 2107.05 reads:

"An existing document, book, record, or memorandum may be incorporated in a will by reference, if referred to as being in existence at the time the will is executed. Such document, book, record, or memorandum shall be deposited in the Probate Court when the will is probated or within thirty days thereafter, unless the court grants an extension of time for good cause shown. * * *"

[2] R. C. 2107.63 reads:

"A testator may by will devise, bequeath, or appoint real or per-

Plaintiff's proposition fails in two respects. First, decedent exhibited no intent to plan her estate *pursuant to* any particular statute, but to provide specific monetary bequests to a hospital, in which she was receiving care, and to her family church, lifetime payments and a free lifetime residence for the health, support and enjoyment of a close friend and companion, a lifetime residence for her brother (the plaintiff), the care of her books, and, primarily, for perpetual financial support to the free public or educational library in Lorain County designated as the recipient of these books. Secondly, R. C. 2107.63 allows only for pourovers to a "trustee of a trust," a fact which is contrary to the basis upon which plaintiff's action rests: that there is no trust.

Plaintiff would have us hold that the survival of decedent's estate plan is irrevocably dependent upon its compliance with the specific statutory scheme whereunder it was designedly drafted. We reject such result, not only for its arbitrariness, but that it would serve also to decrease the quantity and stringency of statutory tests a document could conceivably undergo prior to becoming declared legally valid.

We believe that this case is best stated in 1 Restatement of Trusts 2d 134, Section 54, *Comment f*, which reads, in part:

"If no property was included in the purported inter

sonal property, or any interest in such property, to a trustee of a trust which is evidenced by a written instrument executed by the testator or any other person either before or on the same date of the execution of such will and which is identified in such will.

"The property or interest so devised, bequeathed, or appointed to such trustee shall be added to and become a part of the trust estate, shall be subject to the jurisdiction of the court having jurisdiction of such trust, and shall be administered in accordance with the terms and provisions of the instrument creating such trust, including, unless the will specifically provides otherwise, any amendments or modifications thereof made in writing before, concurrently with, or after the making of the will and prior to the death of the testator. The termination of such trust, or its entire revocation prior to the testator's death, shall invalidate such devise, bequest, or appointment to such trust."

vivos trust, prior to the testator's death, the disposition by will cannot be upheld on the ground of resorting to *facts of independent significance,* since no trust in fact existed prior to the testator's death. The disposition by will can be upheld on the ground of *incorporation by reference* if, but only if, the requirements of that doctrine are complied with. * * *'' (Emphasis added.)

The first principle illustrates plaintiff's argument concerning R. C. 2107.63, and the second principle, appellants' argument. Both are accurate statements of law.

Both are not necessarily mutually exclusive, however, and this court holds that even if a valid trust were not established by decedent's trust agreement, the trust agreement document is incorporated by reference into the will, pursuant to R. C. 2107.05 and the second principle of *Comment f, supra.*

In that event, plaintiff cannot improve his status by maintaining this action, and, accordingly, it was properly dismissed. Therefore, the judgment of the Court of Appeals, reversing that dismissal, must be reversed.

*Judgment reversed.*

O'NEILL, C. J., CORRIGAN, STERN, CELEBREZZE and W. BROWN, JJ., concur.

HERBERT and P. BROWN, JJ., dissent.

HERBERT, J., dissenting. I would affirm the judgment of the Court of Appeals. *Hageman* v. *Cleveland Trust Co.* (1974), 41 Ohio App. 2d 160.

P. BROWN, J., concurs in the foregoing dissenting opinion.

(Appendix 1)
Pertinent portions of the trust agreement read:
"*Article II*
"*Rights Reserved by the Settlor*
"I reserve the right:

"(1) To add other properties to the trust estate, by conveyance, transfer or delivery to the trustee, but only with its consent, to be treated as part of the trust estate as herein provided.

"(2) At any time or times during my life to revoke the settlement hereby evidenced, either in whole or in part, as well as the right to modify in any respect the terms of such settlement. Any modification or revocation, however, shall be by written instrument, signed by me and delivered to the trustee. To whatever extent this settlement may be so revoked, the trustee shall thereupon surrender and deliver to me such portion or all of said policies of insurance and/or such portion or all of such other property as may be the subject of such revocation; conditioned, however, upon my repaying any advances made by the trustee and satisfactorily indemnifying it against any liabilities incurred by it in the execution of this trust.

## "Article III

### "Disposition During Settlor's Lifetime

"1. The trustee shall pay the entire net income derived from the trust estate to me or for my benefit at least quarterly so long as I shall live. The trustee shall also pay and deliver to me or for my benefit such amounts of the principal of the trust estate as I may from time to time request in writing. Notwithstanding the foregoing provisions of this paragraph, during any periods in which I am unable, in the sole opinion of the trustee, to manage my financial affairs with reasonable competence, the trustee may, in its discretion, pay directly to me or for my benefit only such part or all of the net income and, if in the trustee's sole opinion the net income is insufficient, such part or all of the principal of the trust estate as it may from time to time deem necessary or proper to provide suitably for my maintenance, support, health, comfort and enjoyment; and any undistributed income shall be added to the principal of the trust estate at such time or times as the trustee shall deem advisable.

"2. The trustee shall also have power and authority to make advances to me pending accumulation of income or disposition of any part of principal, and for such advances shall have a lien upon the trust estate.

## "Article IV

### "Disposition of Trust Estate upon Settlor's Death

"Upon my death, the trustee shall make the following disposition of the trust estate as augmented by any property added thereto under my last will, less any payments made under the provisions of Article I hereof.

"1. As soon as practical after my decease, the trustee shall pay the sum of * * * $1,000.00 to Deaconess Evangelical Hospital, 4229 Pearl Road, Cleveland, Ohio, for the use of its medical library.

"2. During my lifetime I pledged the sum of * * * $10,000.00 to St. Peter's United Church of Christ in Amherst, Ohio, for the purpose of

erecting a chapel dedicated to the memory of my father, August Hageman, and his family. If said pledge shall not have been paid at the time of my decease and if the said chapel shall have been completed to the satisfaction of F. Marion Koppenhafer and the trustee, or to the sole satisfaction of the trustee if the said F. Marion Koppenhafer shall not survive me, within one * * * year of the date of my decease, then this pledge or the balance thereof shall be paid by the trustee from the trust estate; otherwise the same shall lapse and become a part of my trust estate to be held and administered as hereinafter set forth.

"3. Commencing at my death and if my friend and companion, F. Marion Koppenhafer, shall survive me, the trustee shall pay to or apply for the benefit of F. Marion Koppenhafer the sum of * * * $100.00 per month during her lifetime. In addition, the trustee shall pay to or apply for the benefit of said F. Marion Koppenhafer such sums as the trustee shall deem necessary to provide for her health and adequate medical care. As a guide to the trustee in the exercise of its discretion, it is my desire that such expenditures for health and adequate medical care be for expenses of an extraordinary nature, including by way of example rather than exclusion, hospital or nursing home care and surgical care. In addition, the trustee shall pay to F. Marion Koppenhafer such amount or amounts as she may in writing request of the trustee to enable her to travel as she may choose, but not to exceed * * * $2,000.00 in any one * * * year, such right to be non-cumulative from year to year. The receipt of F. Marion Koppenhafer for sums so requested shall be a full and complete discharge and acquittance of the trustee with respect to such disbursement.

"4. I own two * * * improved parcels of real estate in the city of Lorain, Lorain County, Ohio, one * * * known as 1106 Ninth Street in said city and the other known as 1102 Ninth Street in said city. I have established a library on the first floor of 1102 Ninth Street and the second floor [a]partment of said dwelling is now occupied by F. Marion Koppenhafer. Upon my decease the trustee shall hold such real estate, library and the contents of the dwellings as a part of the trust estate to be administered as follows:

"A. The trustee shall cause all books which are located in the dwelling at 1106 Ninth Street to be moved and properly housed on the first floor of 1102 Ninth Street, the expenses of such moving and housing to be paid from the trust estate.

"B. F. Marion Koppenhafer shall have the right to live and reside in the said apartment at 1102 Ninth Street, rent free, so long as she lives. During such time she shall be custodian of the library on the first floor of said dwelling and shall be in complete charge thereof, and the trustee may look to her to assume and carry out such responsibility and shall not be responsible for her acts as such custodian. My brother, Howard C. Hageman, my nephew, Dwight Conrad Hageman, my niece, Nancy Green and their children shall have the use of the library so long as it is maintained at 1102 Ninth Street.

"C. My brother, Howard C. Hageman, shall have the right to live and reside in the dwelling at 1106 Ninth Street, including the use of the household goods and furnishings located therein, rent free, so long as he shall live.

"D. So long as either F. Marion Koppenhafer or Howard C. Hageman shall live, the trustee shall cause to be maintained the respective dwellings in which each of them is hereinabove given the respective right to live and reside. Maintenance shall include payment of real estate taxes and assessments and premiums for insuring the dwellings, library and contents, as well as such expenditures as the trustee shall deem necessary to keep said dwellings comfortably habitable and in a reasonable state of repair.

"E. Either F. Marion Koppenhafer or Howard C. Hageman may by a writing delivered to the trustee at any time decline and terminate their respective rights of occupancy of the hereinabove set forth real estate. In such event, or if either should not survive me, or upon the death of either that do survive me, then the trustee shall hold the respective parcels of said real estate as a part of the trust estate free from the provisions with respect thereto of this paragraph 4.

"F. At the first to occur of the following: (a) my death predeceased by F. Marion Koppenhafer; (b) the death of F. Marion Koppenhafer, if she survives me; (c) the receipt by the trustee of the written declination of F. Marion Koppenhafer to act or to continue to act as custodian of the library at 1102 Ninth Street; or (d) the incapacity of F. Marion Koppenhafer to such an extent that she is not and will not in the judgment of the trustee be able to serve as custodian of said library, the trustee shall deliver all of the books in said library to such free public library in Lorain County or library maintained by an established educational institution in Lorain County as shall be designated by written instrument delivered to the trustee by my cousin, John Hummel, for such library to have and to hold for free public library and/or educational purposes. In the event that John Hummel shall not be living at such time, or shall in the judgment of the trustee not be capable of making such choice then the trustee shall choose the public library or educational institution to receive such books. The public library or educational institution so chosen is hereinafter referred to as the 'selected library.' Upon delivery of the said books to the 'selected library' the trustee shall be discharged from all responsibility with respect to such books.

"It is my wish and desire that in the choice of the 'selected library' that consideration be given to the willingness of the public library or educational institution to accept said books and to designate the same as the Katharine L. Hageman Memorial Library, the availability of suitable space to house the same, and the library needs of the community or educational institution.

"5. The trustee shall pay from the net income from the trust estate such amounts at such times as shall be required to meet the obligations

hereinbefore set forth in paragraph 4 of this instrument. So long as F. Marion Koppenhafer shall continue as custodian of my library the trustee shall accumulate any income not expended for such obligations and add the same to the principal of the trust estate. Upon the happening of one of the events set forth in subparagraph 4F of this instrument so that my library is delivered to the 'selected library,' the trustee shall pay the balance of the net income after providing for the remaining obligations set forth in paragraph 4, to the 'selected library'; and, after the death of F. Marion Koppenhafer and Howard C. Hageman or his declination as set forth in subparagraph 4E, or upon my death, if neither of them should survive me, the entire net income of the trust estate shall be paid to the 'selected library' in perpetuity to be expended for free public library and/or educational library purposes.

"It is my wish and desire that the income received by the 'selected library' from the trustee hereunder be used for the care and maintenance of my said library and to purchase additional books for free public and/or educational use. In addition, it is my wish and desire that so much of such trust income as the governing board of the 'selected library' may deem proper shall be used to provide suitable housing for the said library and additions thereto. It is my further desire that my brother, Howard C. Hageman, my nephew, Dwight Conrad Hageman, my niece, Nancy Green, and their children be given the generous use of the books from my library by the 'selected library.'

"6. In the event that the 'selected library,' as it then exists, should cease to provide free public library and/or educational library services, then I direct the trustee to pay the net trust income to such institution in Lorain County as the trustee shall then determine to be providing free public library services and/or an educational library."

(Appendix 2)

Pertinent portions of the will read:

"*Item II.* I give and bequeath all my personal clothing and jewelry to my friend and companion, F. Marion Koppenhafer.

"*Item III.* I give, devise and bequeath all the residue of my property, of whatsoever character and wheresoever situate, to the Cleveland Trust Company, of Cleveland, Ohio, as trustee under a certain trust agreement which I have heretofore entered into with the said the Cleveland Trust Company, as trustee, under date of the 11th day of June, 1969, to be held, managed and disposed of in accordance with the terms and provisions of said trust agreement as the same may exist at the time of my death."